# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

MICHAEL MCELHANEY,
          Appellant,

v.

DEPARTMENT OF DEFENSE,
          Agency.

DOCKET NUMBER
DC-1221-21-0439-W-1

DATE: April 10, 2024

# THIS ORDER IS NONPRECEDENTIAL[1]

Marc Pasekoff, Esquire, Washington, D.C., for the appellant.

Justin Sacks, Esquire, Falls Church, Virginia, for the agency.

Anette Veldhuyzen, Esquire, Fort Belvoir, Virginia, for the agency.

### BEFORE

Cathy A. Harris, Chairman
Raymond A. Limon, Vice Chairman

### REMAND ORDER

The appellant has filed a petition for review of the initial decision, which dismissed his individual right of action (IRA) appeal for lack of jurisdiction. For the reasons discussed below, we GRANT the appellant's petition for review,

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

VACATE the initial decision, and REMAND the appeal to the regional office for further adjudication in accordance with this Remand Order.

## BACKGROUND

The appellant is employed as a GS-6 Psychiatric Nursing Assistant with the agency in the Department of Behavioral Health at the Fort Belvoir Community Hospital in Fort Belvoir, Virginia. Initial Appeal File (IAF), Tab 1 at 10, Tab 5 at 4. According to the appellant, in September 2014,[2] his coworker and fellow union shop steward wrote a statement to management and/or the agency's Office of Inspector General (OIG) about contractors falsifying time sheets, sleeping on duty, and playing inappropriate videos on Government computers. IAF, Tab 4 at 7, 12, Tab 6 at 7-8. A copy of this statement is not in the record.

In August 2015, an anonymous source sent a letter to management disclosing, inter alia, that contractors were falsifying time sheets, sleeping on the job, and playing inappropriate videos on Government computers. IAF, Tab 4 at 7-8. The appellant alleges that agency management believed he was responsible for this disclosure. *Id.* at 8. In August 2015, the appellant "followed the anonymous letter" with a list of questions posed to management in anticipation of a Town Hall meeting. IAF, Tab 4 at 7, Tab 5 at 9.

In November 2015, the appellant's coworker sent management an email from her official Government email account alleging that a contractor was acting unprofessionally by playing video games and sleeping at work and listed the appellant as a witness. IAF, Tab 4 at 7, Tab 5 at 10-12. She also sent a picture purporting to show the contractor asleep at his desk and alleged that he was "looking at movies, cheating on his time sheets, [and] crossing the line with female patients." IAF, Tab 5 at 12.

---

[2] At times the appellant refers to this communication as having occurred in October 2014, rather than September 2014. IAF, Tab 4 at 12, Tab 6 at 8; Petition for Review File, Tab 1 at 10. However, we agree with the administrative judge that the appellant appears to be referring to the same communication. IAF, Tab 13, Initial Decision at 5 n.2.

In December 2015, the appellant claims that he represented or assisted his coworker with a union grievance by sending management an email asserting that she was invoking her *Weingarten* rights. IAF, Tab 4 at 7, Tab 6 at 4-5. Later that month, the appellant filed his first whistleblower reprisal complaint with the Office of Special Counsel (OSC) (MA-16-1231) over the aforementioned alleged perceived or actual disclosures and activity.[3] IAF, Tab 8 at 29, 32-33.

Around January 2016, the appellant also allegedly disclosed to his supervisor that he was working in a stressful and hostile environment because his supervisor was acting aggressively towards him.[4] IAF, Tab 1 at 13. In February 2017, he again disclosed to his supervisor that his work environment was hostile. *Id.* In October 2019, he contacted the agency's OIG about not receiving the appropriate appraisal award and experiencing bullying and intimidation. IAF, Tab 6 at 17.

According to the appellant, as a result of the communications in September 2014; August, November, and December 2015; and January 2016, he was subjected to retaliation, to include the following: an October 2014 denial of a position upgrade and performance bonus, a December 2015 decreased performance evaluation, performance counseling, reassignment to a receptionist position, a May 2016 performance counseling letter, a July 2016 lowered performance evaluation, a January 2019 change in his work location and hours, an undated improper midterm review, a lowered time-off award, a 2020 lowered

---

[3] The appellant filed an appeal regarding his first OSC complaint (MA-16-1231), which was dismissed for lack of jurisdiction because he failed to exhaust his administrative remedies with OSC that he was perceived as making the September 2014 and August and November 2015 disclosures and failed to exhaust his claim that he made a disclosure in August 2015, when he submitted the list of Town Hall questions. *McElhaney v. Department of Defense*, MSPB Docket No. DC-1221-18-0237-W-1, Initial Decision at 1, 11-13, 17 (Apr. 11, 2018). That decision became final when neither party filed a petition for review. *Id.* at 17.

[4] The appellant's OSC complaint states this communication occurred in January 2017, not 2016. IAF, Tab 1 at 13. However, because he states elsewhere in the record that it occurred in 2016, this appears to be a typographical error. IAF, Tab 4 at 4, 8, 12; Petition for Review File, Tab 1 at 6, 9.

performance evaluation, the denial of training time, insufficient staffing at his clinic, being ordered to report to work in-person while other staff were allowed to telework because of the pandemic, and being subjected to a hostile work environment. IAF, Tab 1 at 12-13, Tab 5 at 5, Tab 6 at 14, 16-18.

The appellant filed the underlying whistleblower reprisal complaint (MA-18-3780) with OSC in May 2018. IAF, Tab 1 at 7-16. OSC issued him a final determination letter in March 2021, closing out its investigation into his complaint. *Id*. at 17. The appellant filed this IRA appeal with the Board. *Id*. at 1, 4. The administrative judge thereafter issued an order setting forth the appellant's burden to establish jurisdiction over his appeal. IAF, Tab 3. The appellant submitted a response, providing information regarding the disclosures and activities at issue. IAF, Tab 4 at 4-17. The agency responded to the appellant's submission, and he replied. IAF, Tab 8 at 6-16, Tab 9.

The administrative judge issued an initial decision, dismissing the appeal for lack of jurisdiction. IAF, Tab 13, Initial Decision (ID) at 1, 10-11. She found that the appellant exhausted his administrative remedies before OSC concerning his disclosures and activities as well as his alleged personnel actions. ID at 4. Nevertheless, with respect to the September 2014; August, November, and December 2015; and January 2016 disclosures and activities, she found that the appellant failed to make a nonfrivolous allegation that he made or was perceived to have made protected disclosures, or that he engaged or was perceived to have engaged in protected activity. ID at 4-10. Consequently, the administrative judge did not address whether the alleged disclosures or activities contributed to the personnel actions raised in the appeal. ID at 10.

The appellant has filed a petition for review of the initial decision. Petition for Review (PFR) File, Tab 1. The agency has not responded.

**DISCUSSION OF ARGUMENTS ON REVIEW**

To establish jurisdiction in a typical IRA appeal, an appellant must show by preponderant evidence that he exhausted his remedies before OSC and make nonfrivolous allegations of the following: (1) he made a disclosure described under 5 U.S.C. § 2302(b)(8) or engaged in a protected activity described under 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D); and (2) the disclosure or protected activity was a contributing factor in the agency's decision to take or fail to take a personnel action as defined by 5 U.S.C. § 2302(a). *Corthell v. Department of Homeland Security*, 123 M.S.P.R. 417, ¶ 8 (2016), *overruled on other grounds by Requena v. Department of Homeland Security*, 2022 MSPB 39.

<u>The appellant exhausted his administrative remedies regarding some of his protected disclosures and activities.</u>

As discussed above, the appellant raised before OSC his December 2015 OSC complaint, February 2017 complaint to his supervisor of a hostile work environment, the underlying May 2018 OSC complaint, and his October 2019 OIG complaint as protected activities and disclosures. IAF, Tab 1 at 13, Tab 6 at 17, Tab 8 at 29-35. The administrative judge did not address these alleged activities and disclosures in the initial decision. However, the appellant, who has been represented by counsel throughout this appeal, did not raise them before the administrative judge, with one possible exception. IAF, Tab 1 at 3. Specifically, in his jurisdictional reply, he appears to have raised a claim that he was suspended in March 2021, in retaliation for his May 2018 OSC complaint. IAF, Tab 8 at 69-76, 163-64, Tab 9 at 6. However, there is no evidence he exhausted this personnel action with OSC. IAF, Tab 1 at 12-13, 17. The appellant does not re-raise his claim of retaliation for filing his May 2018 OSC complaint on review or otherwise allege his OSC or OIG complaints or his February 2017 complaint of a hostile work environment led to retaliatory acts by the agency. Therefore, we decline to address these activities and disclosures

further. *See* 5 C.F.R. § 1201.115 (reflecting that the Board normally will consider only issues raised in a petition or cross petition for review).

As to the alleged September 2014; August, November, and December 2015; and January 2016 disclosures and activities, the parties do not dispute the administrative judge's findings that the appellant exhausted them, as well as the remaining alleged personnel actions. We discern no basis to disturb those findings here. ID at 4.

<u>The appellant nonfrivolously alleged that he was associated with his coworker's November 2015 disclosure.</u>[5]

> *The appellant failed to nonfrivolously allege that any disclosure was made in September 2014.*

The administrative judge observed that, in connection with his coworker's September 2014 disclosure, the appellant alleged that he was retaliated against based on his support of the disclosure. ID at 5-7. The appellant restates on review that he was "perceived by the [a]gency to have participated" in this disclosure. PFR File, Tab 1 at 6-7. In making her findings, the administrative judge did not address the fundamental question of whether the appellant nonfrivolously alleged that his coworker made a disclosure in September 2014. We find that he did not. Therefore, we do not reach the issue of whether the agency perceived the appellant to have participated in the disclosure.

A nonfrivolous allegation is an allegation of "sufficient factual matter, accepted as true, to state a claim that is plausible on its face." *Hessami v. Merit Systems Protection Board*, 979 F.3d 1362, 1364, 1369 (Fed. Cir. 2020); *see* 5 C.F.R. § 1201.4(s) (defining a nonfrivolous allegation as an assertion that, if proven, could establish the matter at issue). The Board has held that an appellant's statements regarding his alleged protected disclosures can be so deficient on their face that the Board will find that they fail to constitute a

---

[5] On review, the appellant indicates that he is no longer pursuing a claim that his December 2015 assertions of his coworker's *Weingarten* rights is protected activity, and therefore we have not addressed it here. PFR File, Tab 1 at 6 n.1.

nonfrivolous allegation of a reasonable belief, and thus require dismissal for lack of jurisdiction. *Huffman v. Office of Personnel Management*, 92 M.S.P.R. 429, ¶ 10 (2002). For example, an appellant does not satisfy the reasonable belief requirement if he is merely reporting unsubstantiated rumors. *Id.*

Although the issue here is whether the appellant nonfrivolously alleged any disclosure was made, as opposed to whether he met the reasonable belief test, we find the situation analogous. Here, the appellant provides no specific information from which we can infer that his coworker actually made, or was believed to have made, the alleged statement. He does not explain the basis for his belief that such a statement was made. IAF, Tab 4 at 1, Tab 6 at 7-8; PFR File, Tab 1 at 6. He describes the statement as a letter, but there is no copy in the record. IAF, Tab 6 at 8. At times, the appellant alleges that his coworker sent the statement to "management," IAF, Tab 1 at 11-12, Tab 4 at 7; PFR File, Tab 1 at 6-7, while at other times he alleges that she sent it to OIG, IAF, Tab 4 at 12, Tab 6 at 7-8. He also asserts in some places that the statement was made in September 2014, and in others that it was made the following month. IAF, Tab 1 at 12, Tab 4 at 7, Tab 6 at 7-8; PFR File, Tab 1 at 6. Further, he both indicates that his coworker made the statement and that it was anonymous. IAF, Tab 6 at 6; PFR File, Tab 1 at 6-7. While he submitted a statement from his coworker in support of his appeal, she does not refer to the September 2014 disclosure. IAF, Tab 6 at 4-5. In sum, the appellant has provided no specifics that, if true, would establish that his coworker made a statement regarding contractor misconduct to agency management or OIG. Therefore, we find that he has not made a nonfrivolous allegation that she made such a disclosure.

> *The appellant failed to nonfrivolously allege that the agency perceived him as making a protected disclosure regarding the anonymous August 2015 communication.*

The appellant appears to argue that management mistakenly believed that he made the anonymous August 2015 alleged disclosure. IAF, Tab 4 at 7, Tab 6

at 8; PFR File, Tab 1 at 6. Regarding this disclosure, we agree with the administrative judge that the appellant failed to nonfrivolously allege that he was perceived to have made it. ID at 5-6. As indicated above, a typical IRA appeal involves a claim that the appellant made a protected disclosure or engaged in protected activity. *King v. Department of the Army*, 116 M.S.P.R. 689, ¶ 6 (2011). However, an appellant can also establish jurisdiction on the basis that he was perceived as a whistleblower, even if he did not make the alleged protected disclosure. *Id.* To establish Board jurisdiction, the appellant must nonfrivolously allege that the agency officials who took the alleged personnel actions believed that he made or intended to make disclosures that evidenced the type of wrongdoing listed under 5 U.S.C. § 2302(b)(8). *Id.*, ¶ 8. The appellant falls short of this threshold.

A variety of fact patterns can support a finding that an individual was perceived as a whistleblower. *Id.*, ¶ 7. Among those fact patterns is the "mistaken identity" theory, in which the relevant agency official thought the appellant made protected disclosures, but the appellant did not actually do so. *Rumsey v. Department of Justice*, 120 M.S.P.R. 259, ¶ 7 (2013); *see Special Counsel v. Department of the Navy*, 46 M.S.P.R. 274, 276, 280-81 (1990) (granting a stay extension request based on a claim that the relator may have been perceived as a whistleblower because his supervisors mistakenly believed that he made an anonymous disclosure to a hotline). In finding jurisdiction over perceived whistleblower disclosures under the mistaken identity theory, the Board has relied on allegations that agency officials made statements or received information linking the appellant to the alleged disclosure. *E.g., McCarthy v. International Boundary and Water Commission*, 116 M.S.P.R. 594, ¶ 33 (2011) (finding that testimony from an agency official that he knew an appellant had previously filed whistleblower disclosures, coupled with an email from the appellant to the agency official that he was asserting his rights as a whistleblower who had reported fraud, waste, and abuse, was sufficient evidence that the agency

perceived him as a whistleblower), *aff'd*, 497 F. App'x 4 (Fed. Cir. 2012); *Juffer v. U.S. Information Agency*, 80 M.S.P.R. 81, ¶¶ 2, 16-17 (1998) (finding an appellant nonfrivolously alleged that an agency official perceived her as a whistleblower based on her sworn statement that the official accused her of sharing data, expressed that he was embarrassed by her insistence on the correctness of her analysis of the data, and prohibited her from using the data until it was "properly analyzed").

The anonymous August 2015 statement alleged, among other things, that named contractors were falsifying time sheets by taking longer lunches and leaving the clinic without recording their absence on their timesheets, accepting monetary gratuity from patients, not performing their job duties, sleeping in the office "before operation hours," and engaging in inappropriate behavior with female patients. IAF, Tab 5 at 8. It further alleged that management was aware of the misconduct and failed to address it. *Id*. The appellant has not claimed that anyone advised management that he made the statement or that management accused him of doing so. Instead, he appears to re-argue on review that management believed he made or participated in the anonymous August 2015 alleged disclosure because it is "plausible" that Town Hall questions that he posed to management that same month "could refer" to the anonymous August 2015 statement. IAF, Tab 4 at 8; PFR File, Tab 1 at 7-8. As the administrative judge determined, this argument is unpersuasive. ID at 7.

While the focus of the anonymous August 2015 statement was alleged contractor misconduct, IAF, Tab 5 at 8, the focus of the appellant's Town Hall questions primarily was how leadership planned to address poor management of GS employees, *id.* at 9. For instance, the appellant questioned what was being done to address management retaliating against GS employees, employees receiving a "decent bonus or raise," letting "untrained, inexperienced management run all of [the] good workers away," and concerns about GS workers feeling threatened and bullied by management. *Id*.

Of the 12 Town Hall questions the appellant posed, only 1 related to contractors. Specifically, his seventh question was as follows: "How do you handle a situation when management forms clicks with contractors and hold gs employees to a different standard." *Id.* (capitalization and grammar as in original). While the topic of misconduct by contractors and the agency's response to it are shared in both documents, and the documents are both dated August 2015, there is nothing else to connect them. For example, while the anonymous letter names specific contractors and points to particular types of misconduct, the appellant's Town Hall questions generally expresses concerns about "clicks" between managers and contractors with no additional details; the font of the two documents differ; one is in the form of a letter and the other is an email; the anonymous letter is signed by a "dedicated service member" while the appellant identified himself as nonpreference eligible on his appeal form; and the disclosures in the anonymous letter were framed as assertions while the appellant's Town Hall submission was in the form of questions. IAF, Tab 1 at 1, Tab 5 at 8-9. In short, we do not believe that the appellant has nonfrivolously alleged any similarity between the two communications that would cause the agency to identify them as coming from the same author.

Lastly, as the administrative judge observed, when OSC asked the appellant if he thought the agency believed that he had sent the anonymous August 2015 statement, he responded in the negative. ID at 5-6; IAF, Tab 6 at 8. On review, the appellant disagrees that his admission to OSC is relevant to determining the agency's perception that he made the statement. PFR File, Tab 1 at 9. Instead, he argues that the agency's perception that he is a whistleblower can be inferred from the fact that the agency took personnel actions against him following the statement. *Id.* We reject this approach, which essentially would infer knowledge of a disclosure (or, in this case, perception that the appellant made a disclosure) from timing. This inquiry may be relevant to the appellant's burden to nonfrivolously allege contributing factor, but it is not relevant to the inquiry here

of whether the agency perceived that he made a disclosure. *See Pridgen v. Office of Management and Budget*, 2022 MSPB 31, ¶ 63 (discussing proof of the contributing factor criterion in a whistleblower reprisal claim using the knowledge/timing test). For the reasons discussed above, we agree with the administrative judge that the appellant failed to nonfrivolously allege that management perceived him to have made the anonymous August 2015 statement.

> *The appellant failed to nonfrivolously allege that his August 2015 Town Hall questions and his January 2016 complaint of a hostile work environment were protected disclosures.*

As to his August 2015 Town Hall questions, the appellant reargues on review that certain agency officials believed, based on those questions, that he had made or intended to make disclosures evidencing the type of wrongdoing set forth under 5 U.S.C. § 2302(b)(8). PFR File, Tab 1 at 7-8. The administrative judge found that his questions were vague allegations of wrongdoing over imprecise matters and that the appellant failed to nonfrivolously allege that he either made or was perceived to have made a protected disclosure. ID at 7-8. Disclosures must be specific and detailed, not vague allegations of wrongdoing regarding broad or imprecise matters. *Mc Corcle v. Department of Agriculture*, 98 M.S.P.R. 363, ¶¶ 18, 21 (2005). We agree with the administrative judge.

As we previously touched on above, in the email containing his Town Hall questions, the appellant asked how the agency would address poor management, management retaliating against GS employees, employees receiving a "decent bonus or raise," management forming "clicks" with contractors but holding GS employees to a different standard, letting "untrained, inexperienced management run all of [the] good workers away," and concerns about GS workers feeling threatened and bullied by management. IAF, Tab 5 at 9. He argues that his questions amount to allegations that management was utilizing threats to secure employee compliance and allowing contractors to engage in fraud. PFR File,

Tab 1 at 7-8. However, the appellant did not state any specific facts that could evidence such wrongdoing.

On review, the appellant reargues that the hospital Director's response to his Town Hall questions, "acknowledging that [his] questions are areas which would create risk for the organization and . . . are downright against many federal labor laws," was sufficient evidence that he made or at least was perceived to have made a protected disclosure. PFR File, Tab 1 at 8. On the alleged facts here, we disagree that the Director's response to the appellant's questions demonstrates that she perceived him to be making a protected disclosure. Specifically, she invited the appellant to meet with her and stated as follows: "There are a few comments below which would require more information as they certainly are areas which would create risk for the organization and some are downright against many federal labor rules." IAF, Tab 5 at 13. When the appellant declined to provide more information for fear of retaliation, the Director explained as follows: "I cannot assist or answer your questions without understanding the issues." *Id*. at 14. She then "encourage[d]" him to contact the agency's OIG as an "anonymous complainant."[6] *Id*. The appellant does not argue, nor does he present evidence, that he followed up with OIG or that the Director believed he did so. Further, the agency denies that his coworker or an

---

[6] Prior to December 12, 2017, the whistleblower protection statutory scheme provided that "cooperating with or disclosing information to the Inspector General of an agency, or the Special Counsel, in accordance with applicable provisions of law," is protected. *Edwards v. Department of Labor*, 2022 MSPB 9, ¶ 29, *aff'd*, No. 2022-1967, 2023 WL 4398002 (Fed. Cir. July 7, 2023); *see* 5 U.S.C. § 2302(b)(9)(C). Section 1097(c)(1) of the National Defense Authorization Act of 2018 (NDAA), Pub. L. No. 115-91, 131 Stat. 1283 (2017), amended section 2302(b)(9)(C) to provide that, in addition to the Inspector General of an agency or the Special Counsel, a disclosure to "any other component responsible for internal investigation or review" is also protected. In *Edwards*, the Board found that this amendment is not retroactive. *Edwards*, 2022 MSPB 9, ¶¶ 29-30. Thus, because the appellant's August 2015 communications with the Director occurred prior to the 2018 NDAA's enactment, the Board need not consider whether it could constitute protected activity under 5 U.S.C. § 2302(b)(9)(C).

anonymous source filed a complaint with OIG from 2014 to July 2017, "regarding contractor behavior" in the appellant's department. IAF, Tab 8 at 10-11.

The appellant also challenges the administrative judge's finding that his January 2016 disclosure to his supervisor that he was "working in a stressful and hostile environment" because his supervisor was acting aggressively towards him was vague and conclusory. IAF, Tab 1 at 13; ID at 9-10; PFR File, Tab 1 at 9-10. He argues that the administrative judge erroneously considered only his January 2016 disclosure and not his examples of harassment when assessing whether he nonfrivolously alleged a protected disclosure. PFR File, Tab 1 at 9-10. We are not persuaded.

Protected whistleblowing takes place when an appellant made disclosures that he reasonably believed evidenced a violation of law, rule, or regulation, gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety. *King v. Department of Veterans Affairs*, 105 M.S.P.R. 21, ¶ 13 (2007). An appellant's broad and imprecise assertions that he is being harassed and subjected to a stressful work environment fail to set forth allegations of wrongdoing under 5 U.S.C. § 2302(b)(8). *See Carr v. Department of Defense*, 61 M.S.P.R. 172, 181 (1994). According to the appellant, he disclosed to agency "management that his supervisor was fostering a hostile work environment." IAF, Tab 4 at 8, Tab 5 at 4. He repeats this description of his disclosure on review. PFR File, Tab 1 at 6. He argues that his allegations to OSC of personnel actions occurring before and after this alleged disclosure provide the specific examples of harassment that were missing from the disclosure itself. *Id.* at 10-11 (citing IAF, Tab 1 at 12-13, Tab 6 at 14-18).

We agree with the administrative judge that the appellant failed to nonfrivolously allege that he made a disclosure to his supervisor that he reasonably believed evidenced wrongdoing under 5 U.S.C. § 2302(b)(8). As the appellant argues, he provided OSC with a timeline of the events preceding and following his January 2016 statement to his supervisor. IAF, Tab 1 at 12-13.

He also amended his OSC complaint to add a number of personnel actions, most of which occurred on unspecified dates, or in 2019 and 2020. IAF, Tab 6 at 14-18. Assuming the appellant's supervisor was involved in the alleged incidents preceding January 2016, for example, denying the appellant an upgrade in October 2014, and attempting "to induce" him to attend a meeting as his coworker's sole union representative, the appellant has not explained why a reasonable person in his position would believe that his supervisor should have connected these events to the appellant's January 2016 statement. *See King*, 105 M.S.P.R. 21, ¶ 14 (concluding that an appellant's bare allegations of patient neglect and abuse and making false statements to the OIG were insufficient to determine whether she made a nonfrivolous allegation that her disclosures were protected). Thus, we discern no basis to disturb the administrative judge's finding.[7]

> *The appellant nonfrivolously alleged that the agency associated him with his coworker's November 2015 protected disclosure.*

On November 24, 2015, the appellant's coworker sent an agency Service Chief for Contract Support an email from her official Government email account alleging that a named contractor was acting unprofessionally by playing video games and sleeping at work. IAF, Tab 4 at 7, Tab 5 at 10-12. In the email, a copy of which is in the record, the appellant's coworker indicated that "civilian employees have informed management several times of [the contractor's] unprofessionalism." IAF, Tab 5 at 10. She further stated that the Chief of Fort Belvoir Community Hospital's Department of Co-Occurring Partial Hospitalization (COOPH) "sits across the hall from the office that the contractors

---

[7] There is some indication in the record that the appellant believed that his hostile work environment claim was due to discrimination or reprisal for equal employment opportunity (EEO) activity. IAF, Tab 6 at 17, Tab 8 at 166-67. If so, the appellant's disclosure of a hostile work environment generally would not be within the scope of the Board's IRA jurisdiction unless he also sought to remedy reprisal for whistleblowing. *See Edwards*, 2022 MSPB 9, ¶¶ 10, 20, 22, 24-25. The appellant did not expand on the potential connection to an EEO claim, other than to state that he "met with EEO." IAF, Tab 6 at 17.

work out of and you can walk down the hall and here [sic] them playing videos on their computers with provocative and profane language on it." *Id.* She identified the appellant as a witness "to this behavior." IAF, Tab 5 at 10, Tab 6 at 7. She included with her email a picture purporting to show the contractor asleep at his desk and alleged that he was "looking at movies, cheating on his time sheets, [and] crossing the line with female patients." IAF, Tab 5 at 12.

The administrative judge did not make a finding as to whether, if the underlying facts of the November 2015 disclosure were true, a reasonable person would believe they evidenced wrongdoing under 5 U.S.C. § 2302(b)(8). We find that the appellant nonfrivolously alleged that a reasonable person in his position or that of his coworker could reasonably believe that the agency was tolerating the named contractor's behavior of playing video games and sleeping on duty. Further, if true, these allegations would evidence Government wrongdoing. *See Grubb v. Department of the Interior*, 96 M.S.P.R. 377, ¶ 26 (2004) (concluding that time and attendance abuse is a violation of law, rule, or regulation); *see also Johnson v. Department of Health and Human Services*, 93 M.S.P.R. 38, ¶ 11 (2002) (determining that an appellant's disclosures of his reasonable belief that agency officials ignored contract violations and irregularities that cost the Government thousands of dollars, and also ignored a contractor's hiring of undocumented aliens, were protected disclosures of wrongdoing that implicated the Government's interests and reputation). Therefore, we find that the appellant has nonfrivolously alleged that his coworker made a protected disclosure in November 2015.

The appellant alleged below, and reasserts on review, that the agency perceived him as assisting a coworker in making this disclosure. IAF, Tab 4 at 7; PFR File, Tab 1 at 6, 8-9. The administrative judge below found that the appellant's association as a "supporter" of his coworker was not a basis for Board jurisdiction. ID at 6. We disagree.

The whistleblower reprisal statutory scheme prohibits an agency from taking a personnel action against one person because of his relationship with another employee who has made a protected disclosure. *Burrowes v. Department of the Interior*, 54 M.S.P.R. 547, 550-51 (1992); *see Duda v. Department of Veterans Affairs*, 51 M.S.P.R. 444, 446-47 (1991) (finding the Whistleblower Protection Act prohibits agencies from taking personnel actions against an employee because of his or her relationship with another employee who made a protected disclosure). An appellant may establish IRA jurisdiction on the basis that he is closely associated with someone who made a disclosure protected under 5 U.S.C. § 2302(b)(8). *See Mercer v. Department of Health and Human Services*, 82 M.S.P.R. 211, ¶ 9 (1999). Therefore, the administrative judge's determination that the appellant could not establish jurisdiction on this basis was in error.

Further, we find that the appellant has nonfrivolously alleged the agency closely associates him with his coworker. The appellant is named as a witness to the contractor's misconduct in his coworker's email. IAF, Tab 5 at 10. Further, his coworker identified herself in the disclosure as a union steward, a position the appellant also held. IAF, Tab 5 at 10, Tab 6 at 10. Additionally, the appellant indicated he had represented his coworker in his capacity as a steward in September 2015, just 2 months prior to her disclosure. IAF, Tab 6 at 4-5, 10-11. In *Duda*, 51 M.S.P.R. at 445-47, the Board found that an appellant established jurisdiction over his fiancée's disclosures regarding the appellant's supervisor, which he alleged resulted in his termination. We conclude that the appellant's shared role as a union steward, his representation of his coworker, and the fact that he was named in the disclosure are sufficient to establish jurisdiction over the November 2015 disclosure.

<u>The appellant nonfrivolously alleged that his coworker's November 2015 disclosure was a contributing factor in his December 2015 reassignment.</u>

The administrative judge did not make findings as to whether the appellant nonfrivolously alleged that the November 2015 disclosure was a contributing

factor in a personnel action. An appellant's protected activity is a contributing factor if it in any way affects an agency's decision to take, or fail to take, a personnel action. *Dorney v. Department of the Army*, 117 M.S.P.R. 480, ¶ 14 (2012). One way an appellant may establish the contributing factor criterion is the knowledge/timing test, under which he submits evidence showing that the official taking the personnel action knew of the disclosure or activity and that the personnel action occurred within a period of time such that a reasonable person could conclude that the disclosure or activity was a contributing factor in the personnel action. *Pridgen*, 2022 MSPB 31, ¶ 63.

The Board has held that a personnel action taken within approximately 1 to 2 years of an appellant's disclosures satisfies the timing portion of the knowledge/timing test. *Id.* The appellant alleges that the November 2015 email caused the agency to reassign him to a receptionist position in December 2015, and decrease his performance evaluations thereafter. PFR File, Tab 1 at 9; IAF, Tab 4 at 12, 16, Tab 5 at 5. The agency agrees that the appellant was reassigned following his coworker's disclosure. IAF, Tab 8 at 13. A reassignment is a personnel action. 5 U.S.C. § 2302(a)(2)(A). Therefore, the appellant's allegations are sufficient to meet his jurisdictional burden as to the timing prong of the knowledge/timing test as it concerns his reassignment.

We also conclude that the appellant nonfrivolously alleged that one of the individuals involved in the decision to reassign him had knowledge of his coworker's disclosure. The Contract Support Service Chief responded to his coworker's November 2015 email the following day, stating that she had referred the matter to the "COR," who would in turn "address the issue with the department chief." IAF, Tab 5 at 10. Based on the context, it appears that the "department chief" was the COOPH Chief, who the appellant's coworker alleged tolerated the contractor's behavior. *Id.* Although the appellant did not specifically allege who the COOPH Chief was, we find that the email reflecting the intent of Contract Support Service Chief to ensure that the COOPH Chief was

aware of the disclosure is sufficient to constitute a nonfrivolous allegation that the COOPH Chief learned of the disclosure shortly after it was made. *See Duggan v. Department of Defense*, 484 F. App'x 533, 540 (Fed. Cir. 2012) (stating that an agency's official's knowledge of a protected disclosure "may be inferred from the facts of the case");[8] *see also Skarada v. Department of Veterans Affairs*, 2022 MSPB 17, ¶ 6 (observing that any doubt or ambiguity as to whether the appellant made nonfrivolous jurisdictional allegations should be resolved in favor of finding jurisdiction).

In cases such as this one, when the appellant has alleged multiple personnel actions, the Board has jurisdiction when the appellant exhausts his administrative remedies before OSC and makes a nonfrivolous allegation that at least one alleged personnel action was taken in reprisal for at least one alleged protected disclosure. *Skarada*, 2022 MSPB 17, ¶ 13. Therefore, we find it appropriate to remand this appeal for a determination on the merits. On remand, the administrative judge should make findings as to whether the appellant has met his burden to nonfrivolously allege that the November 2015 disclosure was a contributing factor in any other exhausted personnel actions and, if so, adjudicate those matters on the merits as well.

---

[8] The Board may rely on unpublished decisions of the U.S. Court of Appeals for the Federal Circuit if it finds the court's reasoning persuasive, as we find here regarding the *Duggin* decision. *See Mauldin v. U.S. Postal Service*, 115 M.S.P.R. 513, ¶ 12 (2011).

**ORDER**

For the reasons discussed above, we remand this case to the regional office for further adjudication in accordance with this Remand Order.

FOR THE BOARD:        *Gina K. Grippando*
_____

Gina K. Grippando
Clerk of the Board

Washington, D.C.